# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA DUNLAP, | No. 4:19-CV-00222 |
| Plaintiff, | (Judge Brann) |
| v. | (Magistrate Judge Mehalchick) |
| ANDREW SAUL,[1] *Commissioner of Social Security*, | |
| Defendant. | |

# ORDER

### JUNE 18, 2020

Linda Dunlap filed this action seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying Dunlap's claim for social security disability benefits and supplemental security income.[2] In April 2020, Magistrate Judge Karoline Mehalchick issued a Report and Recommendation recommending that this Court vacate the Commissioner's decision, remand this matter for further proceedings, and close this case.[3] The Commissioner filed timely objections to the recommendation, asserting that Magistrate Judge Mehalchick erred in recommending that the administrative law judge ("ALJ") improperly substituted

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul, as the successor officer to Nancy Berryhill, Acting Commissioner of Social Security, is automatically substituted as Defendant in this action.
[2] Docs. 1, 9.
[3] Doc. 14.

his own lay opinion for that of medical professionals and improperly reached a residual functional capacity ("RFC") determination without the benefit of a supporting medical opinion.[4]

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'"[5] Regardless of whether timely objections are made, district courts may accept, reject, or modify—in whole or in part—the magistrate judge's findings or recommendations.[6]

The Court concludes that Magistrate Judge Mehalchick properly determined that the ALJ erred by reaching an RFC determination without the benefit of any physician's opinion, while simultaneously rejecting the opinion of Dunlap's treating physician, Dr. Kibibi Gaughan.  First, the law is clear that an ALJ may not reject a treating physician's opinion without a contrary, reliable medical opinion upon which to rely.[7]  Here, the only medical opinion that the ALJ discussed was Dr. Gaughan and, in the absence of a second opinion, the ALJ improperly rejected the opinion of Dunlap's treating physician.

---

[4] Doc. 15.
[5] *Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)).
[6] 28 U.S.C. § 636(b)(1); Local Rule 72.31.
[7] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 588-96 (M.D. Pa. 2016).

Second, by rejecting the only medical opinion that offered an assessment of Dunlap's functional abilities, "the ALJ was forced to reach a residual functional capacity determination without the benefit of any medical opinion."[8] As judges within the United States District Court for the Middle District of Pennsylvania have frequently stated, "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[9] Where an ALJ rejects all available medical opinions, courts will generally conclude "that the ALJ impermissibly relied on speculation or lay interpretation of medical evidence to reach" an RFC determination.[10] Here, by rejecting Dr. Gaughan's opinion, the ALJ was forced to erroneously rely upon his own lay interpretation of the medical evidence to determine Dunlap's functional limitations.

The Commissioner disputes that an ALJ must rely on a medical opinion in reaching an RFC and argues instead that the ALJ alone is responsible for making a determination as to a claimant's RFC.[11] While this is true as a technical matter, commentators have explained:

> it can reasonably be asserted that the ALJ has the right to determine whether a claimant can engage in sedentary, light, medium, or heavy work. The ALJ should not assume that physicians know the Social Security Administration's definitions of those terms. Even though the

---

[8] *Maellaro v. Colvin*, No. 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014).
[9] *Id.* (collecting cases).
[10] *McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015).
[11] Docs. 10, 15.

    RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination. Of course, in such a situation a residual functional capacity determination is merely a mechanical determination, because the regulations clearly and explicitly define the various types of work that can be performed by claimants, based upon their physical capacities.[12]

"[T]here is a critical difference between an ALJ who resolves a conflict in medical opinions and an ALJ who rejects all of the medical opinions in favor of lay interpretation."[13] Thus, courts within this District have repeatedly rejected the notion that an ALJ may—in all but the rarest of circumstances—craft an RFC without the benefit of a supporting a medical opinion. In a thorough and well-reasoned decision, my colleague, United States District Judge Yvette Kane, explained that that a contrary medical opinion is generally required to reject a treating physician's opinion, and that an ALJ's "lay interpretation of medical

---

[12] Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Courts*, § 3:47 (2019) (emphasis added) (internal footnotes omitted). *See also Ortiz v. Saul*, No. 4:19-CV-0246, 2020 WL 1274112, at *16 (M.D. Pa. Jan. 31, 2020) ("Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information").

[13] *Burns*, 156 F. Supp. 3d at 589.

4

evidence as insufficient" to determine a claimant's RFC.[14] This Court sees no reasoned basis to depart from this firmly-established case law.

Certainly, as this Court expressed in *Myers v. Berryhill*, nothing "requires the ALJ to obtain matching 'opinion' evidence in order to fashion a claimant's RFC."[15] However, this statement should not be misconstrued or given greater meaning than intended, as it merely reiterates the well-established concept that, while ALJs may only rarely reach an RFC determination without the benefit of a medical opinion, there are occasions where it is appropriate to so do. Thus, in *Myers*, this Court found it notable that the claimant did not proffer a single opinion from an acceptable medical source who opined that the claimant's functional limitations were more severe than the ALJ found.[16] Similarly, in *Ortiz v. Saul*, this Court noted that an ALJ generally may not reject all medical opinions and reach an RFC determination based on his own lay opinion.[17] However, because no medical professional had opined that the claimant had disabling limitations, remand was not required.[18]

And in *Mays v. Barnhart*, the Third Circuit affirmed the Commissioner's decision rejecting the only medical opinion of record opining as to the claimant's functional limitations—an opinion that was proffered by a non-treating physician—

---

[14] *Id.* at 592; *see id.* at 588-96.
[15] 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019).
[16] *Id.* at 537-38.
[17] 2020 WL 1274112 at *16-17.
[18] *Id.* at *18.

and noted that an ALJ "is not required to seek a separate expert medical opinion."[19] Importantly, the Third Circuit concluded that the ALJ properly rejected the medical opinion because "the record indicate[d] that [the claimant's] condition began to deteriorate sometime in 1998, after her insured status had expired" while the doctor did not examine the claimant until after her insured status had expired—and nothing related the opinion back to the period prior to the expiration of her insured status—rendering that opinion irrelevant.[20] Moreover, the medical records contained no evidence that the claimant had a disabling physical condition prior to the expiration of her insured status.[21]

Likewise, in *Kays v. Colvin*, the court was presented with "the rare occasion where [a medical opinion] was not required" to formulate an RFC.[22] There, as in *Mays*, the court noted that the ALJ properly rejected the only medical opinions of record because those opinions referenced limitations and medical findings that occurred after the claimant's insured status had lapsed and did not address the claimant's physical limitations during the relevant period.[23] Furthermore, there were no medical records that would support finding any severe physical limitations during the relevant period, and there was a treatment gap of nearly four years following the

---

[19] 78 F. App'x 808, 813 (3d Cir. 2003).
[20] *Id.* at 813 n.4.
[21] *Id.* at 813.
[22] No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014).
[23] *Id.* at *5-6.

end of the relevant period.[24] Significantly, "no doctor ever opined that, during the relevant period, [the claimant] was more limited than the ALJ found her to be," and the court thus determined that remand was not warranted in that case.[25]

As these cases demonstrate, there are circumstances where it is not error for an ALJ to reach an RFC determination without the benefit of a supporting medical opinion. This, however, is not such a case. If the ALJ believed that Dr. Gaughan's opinion was inconsistent either internally or with Dunlap's treatment records, it was incumbent upon the ALJ to inquire of Dr. Gaughan about these inconsistencies or obtain a separate medical opinion on the matter.[26] The ALJ failed to so do, and instead erroneously relied upon his own lay speculation to reach an RFC determination.

For those reasons, upon de novo review of the record, the Court finds no error in Magistrate Judge Mehalchick's recommendation. Consequently, **IT IS HEREBY ORDERED** that:

1. Magistrate Judge Karoline Mehalchick's Report and Recommendation (Doc. 14) is **ADOPTED**;

---

24 *Id.* at *6-8.
25 *Id.* at *8.
26 *See Burns*, 156 F. Supp. 3d at 592-93 (explaining that the relevant Social Security "Regulations preclude an ALJ from concluding that a treating medical opinion is 'unsupported' without recontacting the treating physician," and holding that "simply reinterpreting medical evidence to reject a treating source opinion without attempting to recontact the treating source opinion violates the ALJ's duty to develop the record").

2. The Commissioner's decision is **VACATED**, and this matter is **REMANDED** for further proceedings;

3. Final Judgment is entered in favor of Plaintiff and against Defendant pursuant to Fed. R. Civ. P. 58 and sentence four of 42 U.S.C. § 405(g); and

4. The Clerk of Court is directed to **CLOSE** this case.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge